KAREN K. SPECIE, Chief U.S. Bankruptcy Judge
THIS MATTER came before the Court for hearing on July 3, 2018 on motions of *914 Capital City Bank ("CCB") for extensions of time to file complaints objecting to dischargeability of certain debts and to Debtors' discharges (collectively, the "Motions for Extension").[1] Debtors filed objections.[2] On July 10, 2018 the Court entered orders denying the Motions for Extension;[3] the basis for the denial is set forth here.
Two separate loans and lending relationships underlie CCB's claims. The first loan is between CCB and Tumbleson White Construction, Inc. ("TWC") (the "TWC Loan"),[4] a general contracting company of which Debtor, John Doyle Tumbleson, Jr. ("Mr. Tumbleson"), was a 50% shareholder.[5] The TWC Loan is a business line of credit entered into on December 1, 2016, secured by TWC's accounts receivable, and guaranteed by Mr. Tumbleson and Joseph White ("Mr. White"), the other 50% shareholder.[6] The TWC Loan went into default. On November 8, 2017, CCB filed suit in state court against TWC, Mr. Tumbleson and Mr. White as guarantors, and other entities unrelated to this case (the "State Court Case").[7] It is undisputed that Karen Lynn Tumbleson ("Ms. Tumbleson") had no interest in TWC or the TWC Loan. The second loan is an unsecured loan made by CCB to both Debtors (the "Tumbleson Loan").[8]
Debtors filed their voluntary Chapter 7 petition on February 24, 2018[9] and listed CCB on their Schedules E/F filed on February 27, 2018.[10] CCB's attorney filed a notice of appearance in the case on March 12, 2018.[11] The first date set for the Section 341 meeting of creditors was April 4, 2018 and the deadline for filing § 523 and § 727 complaints was noticed as June 4, 2018 (the "Deadline").[12] CCB filed the Motions for Extension on the last day of the Deadline.[13]
At the § 341 meeting CCB's counsel appeared and questioned Mr. Tumbleson regarding an October 16, 2016 personal *915 financial statement.[14] The purpose of these questions was apparently to determine how Mr. Tumbleson had calculated the value of his 50% interest in TWC.[15] After the § 341 meeting CCB's attorney followed up on those questions with Debtors' counsel. On April 26, 2018, Debtors' counsel provided CCB's attorney a letter containing answers to its questions.[16]
As its reason for seeking the extensions of time, CCB alleges that both its state court and bankruptcy counsel were engaged in obtaining discovery from Mr. White, but that Mr. White stopped cooperating.[17] Specifically, CCB's bankruptcy counsel was allegedly engaged in "informal" discovery seeking to obtain from Mr. White documentation to "support [CCB]'s security interest in [TWC]'s accounts receivables and, in turn, the value of [Mr.] Tumbleson's ownership interest in [TWC]."[18] CCB claims that due to Mr. White's failure to cooperate in discovery, it did not have sufficient knowledge of the facts to support a complaint seeking relief under either § 523 or § 727.[19]
Bankruptcy Rules 4004(a) and 4007(c) provide that objections under § 727 and § 523 must be filed not later than 60 days following the first date set for the § 341 meeting.[20] The Court may grant an extension of time to object to discharge or dischargeability for cause.[21] The legal standard for assessing a request for an extension of time to file complaints objecting to a debtor's discharge under Rule 4004(b) and to the dischargeability of a debt under Rule 4007(c) is the same.[22]
Courts have considered seven factors in determining whether "cause" exists for an extension of time to file a complaint under either Rule 4004(b) or 4007(c) : (1) whether the debtor refused in bad faith to cooperate with creditor; (2) whether creditor had sufficient notice of the deadline and the information to file an objection; (3) the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues; (4) whether creditor exercised diligence; (5) the complexity of the case; (6) whether granting the delay will prejudice the debtor; (7) the length of the delay and its impact on efficient court administration.[23] All of these factors mitigate against granting CCB an extension of time.
There is no evidence that Debtors have refused in bad faith to cooperate with *916 CCB. Debtors, through their counsel, have diligently responded to CCB's questions and requests for information.[24] There is no question that CCB had sufficient knowledge of the Deadline in this case; CCB was listed on Debtors' original Schedule E/F, filed a notice of appearance on March 12, 2018, and attended the April 4, 2018 § 341 meeting.[25] There is no proceeding pending in another forum that could result in collateral estoppel. This case is not complex; it involves defaults on a business loan and a personal loan. Considering their full cooperation with CCB's requests for information, the length of the delay in this case that might result if the Court were to grant CCB's requests for extensions would prejudice these Debtors.
The most significant factor in this case is whether CCB exercised sufficient diligence to be entitled to the extensions it requests. A lack of diligence, alone, can be fatal to a creditor's request to obtain an extension.[26] In In re Denike , the key factor that led to the court's denial of a creditor's request for an extension of time was the absence of meaningful discovery.[27] In the case at bar, CCB has had ample time to conduct meaningful discovery, but has not. The only discovery performed by CCB to date, aside from that in state court involving Mr. White, has been to attend and ask questions at the § 341 meeting and exchange correspondence with Debtors' counsel as follow up to the questions asked.
CCB argues that it's attorneys' efforts to obtain informal discovery from Mr. White are sufficient to establish that it exercised diligence in this case. A similar argument was ineffective in In re Ballas.[28] In that case, the creditors argued that their discovery efforts in the debtor's business partner's bankruptcy case constituted sufficient diligence to satisfy the cause requirement to extend the deadline in the debtor's case.[29] In dismissing this argument, the bankruptcy court in Ballas stated: "[Creditors] should not be able to circumvent the requirement of utilizing the appropriate methods of discovery in the Debtor's bankruptcy because of the ancillary benefit of having obtained information about the Debtor from discovery in a related bankruptcy case."[30] The court concluded by stating that allowing creditors to substitute discovery efforts in another case for due diligence in the main case "would render the appropriate means of discovery inefficacious."[31]
Both Debtors and CCB cite this Court's ruling in In re Watson , which weighs against granting an extension to CCB.[32] In *917 Watson , the creditor seeking an extension played an active role throughout the case: it's counsel attended the Section 341 meeting, conducted numerous Rule 2004 examinations, and spent over 100 hours reviewing over ten thousand pages of documents, including bank records, financial documents, and business records of roughly forty entities.[33] Although the creditor in Watson had been diligent in its discovery efforts, this Court nonetheless denied the creditor's request for an extension of time to file a § 523 action, finding that the creditor had sufficient knowledge of a potential claim under § 523 well before the debtors filed bankruptcy.[34]
CCB's argument at the hearing in support of its request for an extension of time file a § 523 complaint hurt its position. CCB argued that in his application for the TWC loan Mr. Tumbleson listed the value of TWC significantly higher than it actually was. CCB claims this is because Mr. Tumbleson inflated the value of TWC's accounts receivable. After TWC's business ceased, CCB apparently analyzed TWC's ledgers, which showed a significant amount of accounts receivable. But when CCB attempted to collect on these accounts, the account debtors claimed they did not owe any money to TWC. These facts show that actions by Mr. Tumbleson that could have given rise to a § 523 claim, and CCB's knowledge of same, occurred pre-petition. Mr. Tumbleson's valuation of his stock in TWC occurred before, or at least no later than when CCB made the TWC Loan in 2016. Any time between then and the date that Debtors filed their Chapter 7 petition CCB could have examined and tested TWC's accounts receivable. Apparently, CCB elected not to do so until after TWC defaulted on the underlying loan. That business decision, and its adverse consequences, are not sufficient grounds to grant CCB an extension of time to sue Mr. Tumbleson under § 523 more than the initial sixty days provided in the Bankruptcy Code and Rules.
CCB has failed to allege or show any basis for a § 727 action, much less a basis upon which the Court should grant it more time within which to do so. None of the questions it asked at the § 341 meeting, or the follow-up requests for information from Debtors' counsel, were designed to discover into actions that would give rise to a § 727 objection to discharge.
CCB failed to demonstrate that cause exists under Bankruptcy Rule 4004(a) or 4007(c) to grant an extension of time to object to Debtors' discharges under § 727, or the dischargeability of a debt under § 523.
For the reasons stated, CCB's Motions for Extension have properly been denied.
DONE and ORDERED on August 1, 2018.

CCB filed two identical motions seeking extensions of time to file complaints pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727. See Motion of Creditor, Capital City Bank, to Extend Time for Filing Complaint Objecting to the Dischargeability of Certain Debts Pursuant to § 727, Doc. 45 and Motion of Creditor, Capital City Bank, to Extend Time for Filing Complaint Objecting to the Dischargeability of Certain Debts Pursuant to § 523 , Doc. 46.

Debtors filed two identical objections to the relief sought in each motion. See Debtor's Objection to Motion of Creditor, Capital City Bank, to Extend Time for Filing Complaint Objecting to the Dischargeability of Certain Debts Pursuant to § 727 , Doc. 49 and Debtor's Objection to Motion of Creditor, Capital City Bank, to Extend Time for Filing Complaint Objecting to the Dischargeability of Certain Debts Pursuant to § 523 , Doc. 50.

Docs. 60 & 61.

Docs. 18, 49 & 50.

Doc. 6.

Docs. 49, 50, 52, Ex. "1" & 53.

See Doc. 52, Ex. "1". The suit was filed in the Circuit Court for the Second Judicial Circuit in Leon County, Florida and is styled Capital City Bank v. Tumbleson White Construction, Inc., et al., Case No.: 2017-CA-002329.

Doc. 49. It is unclear from the record when the Tumbleson Loan was entered into. On Schedule E/F, in reference to the Tumbleson Loan, Debtors state that the debt was incurred between August 2014 and May 2016. Doc. 18, p. 22.

Doc. 1.

Doc. 18.

Doc. 25.

Doc. 14.

CCB originally filed the Motions for Extension on June 1, 2018, and refiled them on June 4, 2018. See Docs. 41-46.

Docs. 49 & 50.

Docs. 49, 50 & 54. CCB does not contest Debtors' allegation that the only questions CCB asked were: "(1) how the value of Mr. Tumbleson's interest in [TWC] contained on a 2016 personal financial statement was calculated and (2) the name of the accounting firm which prepared the 2015 corporate tax return." Doc. 54.

Docs. 49 & 50. CCB does not dispute that the final correspondence between its and Debtors' counsel regarding the questions from the Section 341 meeting was on April 26, 2018.

Doc. 53, p.2.

Id. At the hearing on the Motion, CCB's counsel stated that CCB's counsel in the State Court Case was working with Mr. White. This statement is not in the pleadings.

Id. at p. 3.

Fed. R. Bankr. P. 4004(a) ; Fed. R. Bankr. P. 4007(c).

Fed. R. Bankr. P. 4004(b) ; Fed. R. Bankr. P. 4007(c).

In re Watson , Case No.: 13-30420-KKS, 2014 WL 10879203 at *3 (Bankr. N.D. Fla. May 21, 2014) (citing In re Chatkhan , 455 B.R. 365 (Bankr. E.D.N.Y. 2011) ).

In re Boltz-Rubinstein , 454 B.R. 614, 620 (Bankr. E.D. Pa. 2011) (citations omitted).

The § 341 meeting took place on April 4, 2018 and any follow up questions CCB asked of Debtors were responded to on or before April 26, 2018. See Docs. 14, 49 & 50.

Docs. 14, 18 & 25. CCB was listed on Debtor's mailing matrix at three different addresses. Doc. 17.

In re Denike , 322 B.R. 452, 455 (Bankr. M.D. Fla. 2005) (citing In re Woods , 260 B.R. 41 (Bankr. N.D. Fla. 2001) ).

The creditor came into the case 48 days prior to the deadline; attended a Rule 2004 examination but did not ask any questions; and made no attempt to obtain a copy of the transcript from the Rule 2004 examination. Id. at 455-56.

In re Ballas , 342 B.R. 853, 857 (Bankr. M.D. Fla. 2005), aff'd 212 Fed. Appx. 867 (11th Cir. 2006) (bankruptcy court did not abuse its discretion in finding that creditor had not exercised due diligence).

Id.

Ibid.

Id.

In re Watson , Case No.: 13-30420-KKS, 2014 WL 10879203 (Bankr. N.D. Fla. May 21, 2014).

Id.

The Court in Watson granted the same creditor's motion for an extension of time to file a complaint under 11 U.S.C. § 727. In re Watson , 2014 WL 10879203 at *5. "There is sound policy reason for permitting a creditor to extend the deadline objecting to a debtor's discharge under § 727. Many of the acts giving rise to the objection would not occur until after the petition date .... The same is not true for ... § 523. Generally, the acts giving rise to a nondischargeable debt occur prepetition." In re Watson , 2014 WL 10879203 at *4 (citing In re Moseley , 470 B.R. 223, 227 (Bankr. M.D. Fla. 2012) ).